IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVELYCE MUNGIA,<br><br>    *Plaintiff,*<br><br>v.<br><br>CITY OF PHILADELPHIA *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 18-2634 |

**PAPPERT, J.**                                                                                                                                                                                                                                          October 29, 2018

## **MEMORANDUM**

      After her home was allegedly searched by a group of police officers and detectives without a warrant or her permission, Evelyce Mungia was handcuffed and taken to a police station where she claims she was interrogated and held against her will. Mungia sued Philadelphia Police Officer Daniel Sweeney, Bensalem Detectives Gregory Jackson and David Nieves, the City of Philadelphia, Bensalem Township and unnamed Philadelphia and Bensalem police officers.

      Mungia filed her original Complaint on June 21, 2018. (ECF No. 1.) She amended her pleading on August 27, 2018, and asserted claims under 42 U.S.C. § 1983, the Fourth Amendment, the Fourteenth Amendment and Pennsylvania state law. (ECF No. 13.) Mungia alleged against Sweeney, Nieves, Jackson and the unnamed officers claims for: false arrest and false imprisonment (Count I); excessive force (Count II) and an illegal search in violation of the Fourth Amendment and § 1983 (Count III). She alleged *Monell* violations against the City of Philadelphia and Bensalem Township (Count IV). Mungia asserted against the unnamed officers a state law claim of assault

1

and battery (Count V) and alleged theft against Jackson, Nieves and the unnamed officers, also under state law (Count VI).

On July 31, 2018, Sweeney and the City of Philadelphia answered Mungia's original Complaint, (ECF No. 10), and Jackson, Nieves and Bensalem Township moved to dismiss the claims against them for failure to state a claim under Rule 12(b)(6), (ECF No. 9). After Mungia amended her Complaint as of right, Jackson, Nieves and Bensalem Township filed on September 10, 2018 a second Motion seeking dismissal of Counts II, IV and VI. (ECF No. 14.) The Court grants the Defendants' Motion but will allow Mungia a final opportunity, consistent with this Memorandum, to amend her Complaint.

I

On the morning of February 10, 2018, Mungia was at home when Sweeney, Jackson, Nieves and unnamed Bensalem Township and Philadelphia police officers allegedly damaged her front window and searched her home without a warrant or her consent. (Am. Compl. ¶¶ 12–14.) Mungia claims that Sweeney, Jackson and Nieves supervised the alleged illegal search, directing officers to interrogate her in the kitchen while the search occurred. (*Id.* at ¶¶ 15–16.) Mungia asserts that Jackson and Nieves falsely accused her of involvement in a stabbing and threatened her to turn over her cellphone, which they subsequently searched. (*Id.* at ¶ 17.) Despite Mungia's efforts to explain that she had not committed any crime, the officers handcuffed her and placed in her the back of a police car. (*Id.* at ¶ 18.) Mungia alleges that Sweeney, Jackson and Nieves "observed that the police officers . . . were extremely rough in handcuffing [her], mandhandling her, which they condoned." (*Id.*) Although Mungia told the officers that

her handcuffs were too tight, they refused to loosen them. (*Id.* at ¶ 19.) At the Defendants' direction, Mungia was taken to the police station. (*Id.* at ¶ 18.)

At the station, Jackson and Nieves allegedly interrogated Mungia, deliberately misinforming her that she had been charged with attempted murder and conspiracy, that she would be fully prosecuted and that she would never see her daughter again. (*Id.* at ¶¶ 20–21.) Mungia asserts that Jackson and Nieves forced her to sign a written statement and demanded that she take them to every location she had been on February 8, 2018—the date of an alleged incident involving her boyfriend and her brother. (*Id.* at ¶¶ 7, 23.) Jackson and Nieves allegedly held Mungia against her will at the station until about 7:30 p.m. that night, releasing her without filing any charges. (*Id.* at ¶ 25.) Thereafter, Mungia claims that Sweeney, Jackson and Nieves ordered officers to confiscate and search her car without a warrant. (*Id.* at ¶ 28.) As a result, Mungia seeks damages for the extreme physical pain and severe emotional distress she has suffered. (*Id.* at ¶ 30.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

The plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss"

because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

III

To establish a *prima facie* case under § 1983, Mungia must first demonstrate that a person acting under color of law deprived her of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Mungia must also show that the person acting under color of law "intentionally" violated her constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g., Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. Cal.*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

A

The Court analyzes Mungia's claim against Bensalem Township for failure to properly supervise and/or train (Count IV) under the standard for municipal liability set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Instead, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or

5

execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 658).

Accordingly, a successful *Monell* claim must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citation and quotation omitted).

Failure to train claims "are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for the purposes of failure to train." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Without a pattern of past violations, a plaintiff can go forward on a single violation theory if she can "show both contemporaneous knowledge of the offending incident . . . and circumstances under which [a municipal] supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 (3d Cir. 1997)).

6

Mungia asserts that Bensalem Township "has been deliberately indifferent to its need to properly discipline and/or train . . . Jackson and Nieves . . . when it knew those defendants had a past pattern and practice of violating citizens' rights." (Am. Compl. ¶ 49.) Mungia further contends that "Bensalem Township tacitly endorsed Jackson's and Nieves' actions against citizens on repeated occasions prior to February 10, 2018, with the knowledge that Jackson and Nieves would use the same and/or similar tactics in the future, including those tactics they used against [Mungia]." (*Id.* at ¶ 50.)

Mungia fails to state a claim under *Monell*. A deficient policy or custom must be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so *well-settled* and *permanent* as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (emphasis added). Merely reciting that such a pattern exists, as Mungia has done here, is insufficient.

Mungia also fails to adequately allege deliberate indifference under a single violation theory. In order to meet this theory's comparatively higher burden, Mungia must allege "sufficient factual matter" showing (1) that Bensalem Township had contemporaneous knowledge of the incident and (2) circumstances where Bensalem Township's action or inaction could be found to have communicated a message of approval. *Montgomery*, 159 F.3d at 127. In her Response to Defendants' Motion, Mungia argues that:

> [I]t is highly plausible that after obtaining through discovery, Nieves and Jackson's records of past civil rights violations, including internal affair records, lawsuits, complaints to the Township, etc., and also their disciplinary and training records . . . plaintiff will be able to prove that the Township was deliberately indifferent to the need for discipline and/or remedial training.

7

(Resp. Opp'n at 13, ECF No. 16.) Mungia cannot rely on future discovery to survive the Defendants' Motion to Dismiss. She asserts no facts showing that Bensalem Township had contemporaneous knowledge of the alleged incident. She has also failed to allege any action or inaction by Bensalem Township that could be interpreted as its approval of the alleged incident.

B

Mungia alleges that Jackson and Nieves used excessive force when they broke into her home, directed officers to "roughly handcuff plaintiff" and "refuse[d] to loosen [the handcuffs] or switch them out." (Am. Compl. ¶ 40.) To state a claim of supervisory liability[1] against Jackson and Nieves under this theory, Mungia must plead that the defendants "directed others to violate [her rights]." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Jackson and Nieves can only be held liable if the officers they supposedly directed to violate Mungia's rights actually did so; otherwise, "the fact that [Jackson and Nieves] might have [directed] the use of constitutionally excessive force is quite beside the point." *Id.* (quoting *City of L.A. v. Heller,* 475 U.S. 796, 799 (1986)). Thus, "any claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates." *Santiago*, 629 F.3d at 130.

---

[1] As an initial matter, the Fourth Amendment governs Mungia's excessive force claim under § 1983. In *Graham v. Connor*, 490 U.S. 386, 395 (1989), the Supreme Court held that the Fourth Amendment governs all claims of excessive force during an arrest. *See also Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) ("[W]e note that excessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process.") (citation omitted).The Supreme Court clarified that the Fourteenth Amendment's Due Process Clause protects a pretrial detainee from the excessive use of force, and the Eighth Amendment's prohibition against cruel and unusual punishment protects individuals post-conviction. *Graham*, 490 U.S. 395 n.10 (internal citations omitted).

8

A plaintiff must also allege proximate causation, which is established where the supervisor gave directions that the supervisor "knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* (citation omitted). The connection between the supervisor's directions and the constitutional deprivation must be sufficient to "demonstrate a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue." *Id.* (quoting *Hedges v. Musco,* 204 F.3d 109, 121 (3d Cir. 2000)). Therefore, to state her claim against Jackson and Nieves, Mungia needs to have pled facts plausibly demonstrating that they directed the unnamed officers to conduct the handcuffing in a manner that they knew or should reasonably have known would cause the officers to deprive her of her constitutional rights.

Mungia claims that Jackson and Nieves told the officers "to do what they did," which is thus a "formulaic recitation of the elements of a [supervisory liability] claim." *Santiago*, 629 F.3d at 130 (citation omitted). In other words, Mungia asserts that Jackson and Nieves directed others to violate her rights. As the Third Circuit held in *Santiago*, stating that Jackson and Nieves sought to "have happen what allegedly happened does not alter the fundamentally conclusory character of the allegation." *Id.* Moreover, because the Amended Complaint does not provide any specific factual allegations as to Jackson's and Nieves' directions to the officers, Mungia's allegations do not make it plausible that Jackson and Nieves ordered the officers to conduct the operation in a manner that they knew or should reasonably have known would cause the officers to deprive Mungia of her constitutional rights.

C

Under Pennsylvania law, theft of movable property occurs when a person "unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa. Cons. Stat. Ann. § 3921(a). Mungia alleges that Jackson and Nieves "ordered other police officers to confiscate [Mungia's] car . . . [and] they searched it and/or ordered other police officers to do so without a warrant and those officers intentionally damaged the car at Jackson's and/or Nieves' direction." (Am. Compl. ¶ 28.) Mungia has not described with sufficient detail Jackson's and Nieves' orders with respect to taking her car and from where and for how long her car was taken. She also has not alleged that the title to the vehicle was in her name.

VII

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston*, 363 F.3d at 235; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Frasher v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). Moreover, the Third Circuit has consistently held that if a claim is vulnerable to dismissal under Rule 12(b)(6), a plaintiff should be given the opportunity to amend the complaint and cure the deficiency, even if the plaintiff has not moved to amend the complaint. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Mungia

previously amended her Complaint as of right, and while she has not sought leave to amend her Complaint again, Mungia is free to do so on or before November 13, 2018.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.